IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ANGELINE MONTGOMERY, | |
|---|---|
| Plaintiff, | Civil Action No. |
| vs. | 2:12-CV-01244-MSG |
| MIDLAND CREDIT MANAGEMENT, INC.; MIDLAND FUNDING, LLC; and BURTON NEIL & ASSOCIATES, P.C., | |
| Defendants. | |

**DEFENDANTS, MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING, LLC AND BURTON NEIL & ASSOCIATES, P.C.'S BRIEF IN SUPPORT OF THEIR *DAUBERT* MOTION TO PRECLUDE PLAINTIFF'S EXPERT, DANIEL S. BERNHEIM**

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN P.C.

BY: /s/ Ronald M. Metcho / rmm5150
RONALD M. METCHO, ESQUIRE
ANDREW M. SCHWARTZ, ESQUIRE
2000 Market St., 24th Floor
Philadelphia, PA 19103
215-575-2595 / 215-575-0856 (f)
rmmetcho@mdwcg.com
amschwartz@mdwcg.com
Attorneys for Defendants
Midland Credit Management, Inc.,
Midland Funding, LLC and
Burton Neil & Associates, P.C.

Dated: July 19, 2013

# TABLE OF CONTENTS

Page

I. **PROCEDURAL HISTORY:** ..................................................................2

II. **STATEMENT OF FACTS:** ..................................................................3

III. **LEGAL ANALYSIS:** ..........................................................................5

    A. Standard of Review..............................................................................5

    B. Mr. Bernheim is not Qualified to Testify in this Matter......................7

    C. Mr. Bernheim's Opinions are Not Reliable.........................................8

    D. Mr. Bernheim's Conclusions do not "Fit" the Facts of the Case...................12

IV. **REQUEST FOR DAUBERT HEARING:** .......................................14

V. **CONCLUSION:** ................................................................................15

# TABLE OF AUTHORITIES

Brill v. Marandola, 2008 U.S. Dist. LEXIS 2197(E.D. Pa. Jan. 10, 2008)........13

Calhoun v. Yamaha Motor Corp., 350 F.3d 316 (3d Cir. 2003)......................6

Citizens Fin. Group v. Citizens Nat'l Bank, 2003 U.S. Dist. LEXIS 25977 (W.D. Pa. Apr. 23, 2003)..............................................................................9

Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)...2,5,6,7,8,9,12,14

Elcock v. Kmart Corp., 233 F.3d 734 (3d Cir. 2000).......................................8

Giorgini v. Ford Motor Co., 2008 U.S. Dist. LEXIS 25344 (E.D. Pa. Mar. 28, 2008).................................................................................................6

Heller v. Shaw Indus., Inc., 167 F.3d 146 (3d Cir. 1999)...........................7,12

In re Paoli R. R. Yard PCB Litig., 916 F.2d 829 (3d Cir. 1990).........................6

Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999)..............................5

Magistrini v. One Hour Martinizing Dry Cleaning, 180 F. Supp.2d 584(D. N.J. 2002)...............................................................................................10

Montgomery County v. Microvote Corp., 320 F.3d 440 (3d Cir. 2003)..............9

Oddi v. Ford Motor Co., 234 F.3d 136 (3d Cir. 2000)..................................6,7

Rapp v. Singh, 152 F. Supp. 2d 694 (E.D. Pa. 2001).....................................7

Schneider v. Fried, 320 F.3d 396 (3d Cir. 2003)............................................7

Total Containment Inc. v. Dayco Products, Inc., 2001 U.S. Dist. LEXIS 15838 (E.D. Pa. 2001).......................................................................................6

Weisgram v. Marley Co., 528 U.S. 440 (2000)...............................................6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ANGELINE MONTGOMERY, | Civil Action No. |
|---|---|
| Plaintiff, | |
| vs. | 2:12-CV-01244-MSG |
| MIDLAND CREDIT MANAGEMENT, INC.; MIDLAND FUNDING, LLC; and BURTON NEIL & ASSOCIATES, P.C., | |
| Defendants. | |

**BRIEF IN SUPPORT OF *DAUBERT* MOTION BY DEFENDANTS, MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING, LLC AND BURTON NEIL & ASSOCIATES, P.C. TO PRECLUDE PLAINTIFF'S EXPERT, DANIEL S. BERNHEIM**

Defendants, Midland Credit Management, Inc. ("MCM"), Midland Funding, LLC ("MF")(collectively referred to herein as the "Midland Defendants") and Burton Neil & Associates, P.C. ("BNAPC"), hereby submit the following Brief in support of their motion to preclude the expert testimony of Daniel S. Bernheim from trial under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), stating as follows:

**I.  PROCEDURAL HISTORY:**

Plaintiff Angeline Montgomery ("Plaintiff") commenced this claim by filing a Complaint in the United States District Court for the Eastern District of Pennsylvania on March 9, 2012. Defendants filed their Answer with Affirmative Defenses to Plaintiff's Complaint on June 18, 2012. Discovery is complete, and as such, in accordance with the Court's Fourth Amended

Scheduling Order of March 13, 2013, Defendants' Motion for Summary Judgment is timely and ripe for disposition. See ECF 23, 31.

## II. **STATEMENT OF FACTS:**

Plaintiff's Complaint alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a, et seq. ("FDCPA"), the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. §§ 2270.1, et seq. ("FCEUA"), the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, et seq. ("UTPCPL") and the Dragonetti Act, 42 Pa. C.S.A. §§ 8351, et seq. ("Dragonetti Act") arising from the Defendants' respective efforts to collect a debt obligation originally owed to Capital One, N.A. ("Capital One") and subsequently purchased by MF. See ECF 1.

According to her Complaint, in or around August 2008, Plaintiff discovered that she was alleged to owe a debt to Capital One. Id., ¶8. On June 15, 2009, Plaintiff received a letter from Capital One, stating that "It has been concluded that the account does not belong to you". Id., ¶10. Plaintiff also filed a report with the Philadelphia Police Department, claiming to be the victim of identity theft. See Plaintiff's Police Report, Exhibit "A".

MF purchased the debt from Atlantic Credit & Finance Special Finance Unit III, LLC on December 9, 2010. See Bill of Sale, Exhibit "B". On December 18, 2010, MCM placed a collection call to Plaintiff. See Deposition of Angelique Ross, Consumer Support Services Manager for Midland Credit Management, Inc., Exhibit "C", p. 27-28. During this conversation, Plaintiff verbally

3

requested something in writing "identifying" the debt. See Exhibit "C", page 36, ¶¶ 8-18. MCM sent Plaintiff an initial collection letter in accordance with 15 U.S.C. §1692g, which instructed Plaintiff as to her right to dispute the debt. See initial collection letter, Exhibit "D". Despite these instructions, Plaintiff did not send MCM a written dispute letter. See Deposition of Angeline Montgomery, Exhibit "E", p. 96, ¶ 20.

On January 17, 2011, Plaintiff called MCM and claimed that she was a victim of fraud/identity theft. See Exhibit "C", p. 40, ¶¶ 7-10. She stated that she would fax MCM a letter of dispute, as well as the June 15, 2009 letter from Capital One. See Exhibit "C", p. 40, ¶¶ 7-10, p. 41, ¶¶ 7-11. In spite of this representation, Plaintiff did not provide either a written dispute or the June 15, 2009 Capital One letter to MCM. See Exhibit "C", p. 118, ¶¶ 8-11.

After Plaintiff failed to provide a written dispute, on February 20, 2011, MCM referred the account to BNAPC. See Exhibit "C", page 52, ¶¶ 7-11. On February 24, 2011, BNAPC sent an initial collection letter to Plaintiff in accordance with 15 U.S.C. §1692g, again informing Plaintiff of her right to dispute the debt and request validation of the debt in writing within thirty (30) days of her receipt of the letter. See BNAPC's initial collection, Exhibit "F". On March 14, 2011 BNAPC sent Plaintiff a second letter containing a settlement offer regarding the debt. See BNAPC's March 14, 2011 letter, Exhibit "G". Having received no response from Plaintiff to either of its letters, on May 27, 2011, BNAPC filed a Complaint on behalf of MF against Plaintiff in Philadelphia Municipal Court (the "collection action") seeking to recover the Capital One

4

debt. See Complaint, Exhibit "H". A hearing was scheduled for August 5, 2011.

On July 25, 2011 Plaintiff faxed a letter to BNAPC dated July 22, 2011 which stated that "the account in question was created based on identity theft" and, for the first time, enclosed both Capital One's July 15, 2009 letter to Plaintiff and the Philadelphia Police Department's July 9, 2008 police report. See July 22, 2011 correspondence, Exhibit "I". On August 2, 2011, BNAPC filed a Praecipe to withdraw the collection action. See Praecipe to Withdraw, Exhibit "J". All further collection activity immediately ceased, and the August 5, 2011 hearing was canceled. Plaintiff commenced her lawsuit shortly thereafter.

### III. **LEGAL ANALYSIS**:

#### A. **Standard of Review**

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the United States Supreme Court established a "gatekeeping role for the judge" in determining the reliability and relevancy of expert testimony under Federal Rule of Evidence 702. The purpose of this gatekeeping role is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999). Under Kumho Tire, the reasoning of Daubert extends to expert testimony based upon "technical or other specialized knowledge" as well as more purely scientific knowledge. See

Kumho Tire, 526 U.S. at 141. The Daubert test for reliability is an "exacting one." Total Containment Inc. v. Dayco Products, Inc., 2001 U.S. Dist. LEXIS 15838, *10 (E.D. Pa. 2001) (*citing* Weisgram v. Marley Co., 528 U.S. 440, 451 (2000)). Thus, the proponent of an expert's testimony must prove, by a preponderance of the evidence, that his testimony is reliable under Daubert. Oddi v. Ford Motor Co., 234 F.3d 136, 144 (3d Cir. 2000) (*citing* Daubert, 509 U.S. at 593 n.10).

The Third Circuit has defined the requirements of Fed. R. Evid. 702 under Daubert as a "trilogy" requirement: qualification, reliability, and fit. Calhoun v. Yamaha Motor Corp., 350 F.3d 316, 321 (3d Cir. 2003). It is the "proponent of the expert testimony [that] bears the burden of proving by a preponderance of the evidence that the [Daubert] standard is met." Giorgini v. Ford Motor Co., 2008 U.S. Dist. LEXIS 25344, *9 (E.D. Pa. Mar. 28, 2008). First, the witness must be qualified to testify as an expert. Id. Second, the proponent of the testimony must prove by a preponderance of the evidence that it is reliable, which is to say the proponent of the expert testimony must make a detailed showing of scientific validity and cannot rely on mere conclusory allegations to that effect. See In re Paoli R. R. Yard PCB Litig., 916 F.2d 829, 858 (3d Cir. 1990) ("Paoli I") (requiring developed record and specific findings on reliability). Finally, the "expert testimony must 'fit.'" Id. at 743. In other words, the 'expert's testimony must . . . assist the trier of fact.'" Giorgini, 2008 U.S. Dist. LEXIS 25344, *10-11 (*quoting* Calhoun, 350 F.3d at 321). In order to determine whether there is such a "fit" the court must examine the expert's

6

conclusions "in order to determine whether they could reliably flow from the facts known to the expert and the methodology used." Rapp v. Singh, 152 F. Supp. 2d 694, 705 (E.D. Pa. 2001) (*quoting* Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir. 1999)) (*cited in* Oddi, 234 F.3d at 146). In the present matter, Mr. Bernheim fails to meet all three of the Daubert requirements.

**B.     Mr. Bernheim is not Qualified to Testify in this Matter**

First, Mr. Bernheim is not qualified to give his opinion as to the effect of whether or not Defendants exercised the proper standard of care in initiating legal proceedings against Plaintiff. Qualification requires "that the witness possess specialized expertise." Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003). However, "[a]n expert may be generally qualified but may lack qualifications to testify outside his area of expertise." Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 322 (3d Cir. Pa. 2003) (finding that it was not an abuse of discretion to limit expert's testimony to their field of expertise).

Although Mr. Bernheim has experience in the field of commercial litigation, real estate law and the general practice of professional liability, he is not familiar with creditors' rights, specifically litigation involving the FDCPA. Moreover, Mr. Bernheim has provided no evidence in his expert report or his Curriculum Vitae of meaningful experience involving wrongful use of civil proceedings or Dragonetti Act claims. See Mr. Berhneim's expert report, Exhibit "K". Mr. Bernheim has not written any articles or books about the FDCPA or claims for wrongful use of civil proceedings. See Exhibit "K". Mr. Bernheim's experience as a commercial litigator, defending real estate

7

developers and local banking institutions is simply insufficient to qualify him to give opinions regarding abuse of the legal process associated with the filing of legal actions to recover owed debt obligations. For these reasons, Mr. Bernheim is unqualified to testify on the issues he presents and as such, his testimony should be precluded.

### C. Mr. Bernheim's Opinions are Not Reliable

In the absence of qualifications to give testimony regarding abuse of the legal process in regard to collection actions, Mr. Bernheim cannot give reliable testimony regarding his theories related to Plaintiff's claims.

Rule 702 presents the trial judge with the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Daubert, 509 U.S. at 598. Moreover, under Federal Rule of Evidence 703, experts may rely on facts from firsthand knowledge or observation, information learned at the hearing or trial, and facts learned out of court. Permitting an expert witness to offer opinion testimony unsupported by a sufficient factual foundation would significantly increase the risk of misleading the jury and confusing the issues. Elcock v. Kmart Corp., 233 F.3d 734, 756 (3d Cir. 2000).

The following factors are to be considered under the reliability component of Daubert, although they are not exhaustive:

1. whether a method consists of a testable hypothesis;
2. whether the method has been subjected to peer review;
3. the known or potential rate of error;
4. the existence and maintenance of standards controlling the technique's operation;
5. whether the method is generally accepted;

8

6. the relationship of the technique to methods which have been established to be reliable;
7. the qualifications of the expert witness testifying based on the methodology;
8. the non judicial uses to which the method has been put.

In re Paoli R. R. Yard PCB Litig., 35 F.3d 717, 742, n. 8 (3d Cir. 1994("Paoli II").

Indeed, Daubert requires that an expert have "good grounds" for his or her belief. Id. The opinion must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation." Id. (*quoting* Daubert, 509 U.S. at 590). An expert's testimony may be barred if it is not based on sound data. Montgomery County v. Microvote Corp., 320 F.3d 440, 448 (3d Cir. 2003).

In addition to the eight traditional reliability factors, courts also consider additional factors to be relevant in determining reliability, including: "(i) whether the expert's proposed testimony grows naturally and directly out of research the expert has conducted independent of the litigation ...; (ii) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion...; (iii) whether the expert has adequately accounted for alternative explanations ...; (iv) whether the expert is being as careful as he would be in his professional work outside of the litigation context...; and (v) whether the field of expertise asserted by the expert is known to reach reliable results for the type of opinion proffered by the expert... ." Citizens Fin. Group v. Citizens Nat'l Bank, 2003 U.S. Dist. LEXIS 25977 (W.D. Pa. Apr. 23, 2003)

(*quoting* Magistrini v. One Hour Martinizing Dry Cleaning, 180 F. Supp.2d 584, 594-95 (D. N.J. 2002)).

Here, Mr. Bernheim's opinions are unreliable on their face because he has failed to analyze the material record of facts and evidence at issue in this case. He has, for all intents and purposes, ignored Plaintiff's activities surrounding her direct dispute of the debt account with Capital One, her deliberate delay in providing the documentation in her possession to Midland and BNAPC, and Plaintiff's admitted unwillingness to comply with *her* obligations under the FDCPA. In his expert report, Mr. Bernheim is quick to point out that neither the Midland Defendants nor BNAPC performed a "meaningful investigation" into the liability of the individual named in the lawsuit, but he neglects to mention that Plaintiff withheld information which would have been irrefutably essential to any such investigation. See Exhibit "K", p. 4. Plaintiff's expert also states in his report that "The only 'review' which Midland performed was in connection with the Verification submitted with the complaint, but he neglects to mention that Plaintiff neglected to exercise her right to request validation of the debt. See Exhibit "K", p. 8. Such statements exemplify the expert's habit of conjuring baseless conclusions without conducting his own investigation into the facts and circumstances surrounding the collection activity associated with the debt at issue.

Plaintiff's expert failed to include in his report, for example, testimony from the deposition of Angelique Ross regarding the review of the bill of sale; the Capital One check made out to Angelique Montgomery (and endorsed by

10

Plaintiff); and the electronic data from Capital One to Midland. See Exhibit "C", p. 27, ¶ 25 and p. 28, ¶¶ 1-6. Plaintiff's expert failed to review and report the deposition testimony of Yale Weinstein, Esquire in which Mr. Weinstein stated that he reviewed a verification provided by Ashley Hoffman of Midland, all data and documents provided by MCM and MF, including the Capital One check made out to Angeline Montgomery in the amount of $10,000, and the bill of sale associated with the debt, to verify the information provided in the collection complaint. See p. 48, ¶¶ 14-20 and p. 90, ¶¶ 2-11 of the deposition transcript of Yale Weinstein, Esq., Exhibit L.

Similarly, Plaintiff's expert failed to address the testimony of Midland's senior legal specialist, Ashley Hoffman, regarding the verification process that took place prior to the filing of the collection action. Ms. Hoffman testified that she confirmed that Midland owned Plaintiff's debt and then signed the verification for the underlying suit prior to the actual filing of the collection action. See p. 22, ¶¶ 18-23 of the deposition transcript of Ashley Hoffman, Exhibit "M"). Mr. Bernheim again essentially ignores this testimony, and instead reaches the factually hollow conclusion that Defendants did not perform sufficient investigations because Midland Defendants have had prior problems with the seller of the debt such that Midland "should have" attempted to review the file. See Exhibit "K", p. 7-8. Had Mr. Bernheim taken his own advice and reviewed the record that has been developed in this matter, he would have found that the Midland Defendants and BNAPC thoroughly reviewed *all* documentation and information in their possession prior to

11

making decisions regarding both collection of the debt and the filing of the collection action.

It is impossible for Mr. Bernheim's conclusions to be deemed reliable when he himself failed to research or investigate the facts of record in this case before providing his opinions. Mr. Bernheim is not even sure about what may have been reviewed by the Defendants prior to the filing of the collection action and, instead, makes redundant comments throughout his report that no independent investigation was performed. Conveniently, Mr. Bernheim leaves out of his report the fact that MCM attempted to work with Plaintiff to obtain documentation regarding her claimed identity theft, *only for Plaintiff herself to thwart MCM's efforts by actively withholding information.* These selectively omitted facts exemplify Mr. Bernheim's failure to conduct a reasonable analysis into the circumstances surrounding the collection activity at issue. As no discernible method was used for Mr. Bernheim to form his conclusions, there is no way that this methodology can be deemed reliable under the standard set forth by Daubert. His report and his testimony must therefore be precluded.

### D. Mr. Bernheim's Conclusions do not "Fit" the Facts of the Case.

The last requirement under Daubert is that the expert's opinion must "fit" the facts of the case. In order to determine whether there is such a "fit" the court must examine the expert's conclusions "in order to determine whether they could reliably flow from the facts known to the expert and the methodology used." Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir. 1999). An expert cannot ignore the uncontradicted facts. Indeed, in order to

be admissible an expert's testimony must have some connection to existing facts. Brill v. Marandola, 2008 U.S. Dist. LEXIS 2197, *13 (E.D. Pa. Jan. 10, 2008). An expert may not "make up" facts in order to support his conclusions, nor can he rely upon unfounded factual assumptions.

In the present matter, Mr. Bernheim bases his conclusions that no independent investigation was performed without analyzing the complete record associated with this matter. As noted above, Mr. Bernheim simply ignored all facts that do not "fit" his preconceived opinion that the Defendants acted without probable cause. Indeed, Mr. Bernheim actually mischaracterizes the evidence of record in a thinly veiled effort to give his opinion the appearance of a sound basis: for example, he incorrectly characterizes MCM's initial collection letter by stating that the letter (and, through association, § 1692g) do not require a written dispute, when the letter (and, by extension, §1692g) readily establish otherwise. See Exhibit "K". Had Mr. Bernheim reviewed the initial letter at issue he would have become aware that the letter clearly required the debtor to submit a dispute in writing. See Exhibit "D". MR. Bernheim is certainly entitled to his own opinion, *but he is not entitled to his own facts – he cannot simply make up the facts he wants.* Mr. Bernheim has either failed to thoroughly examine the facts and evidence associated with this matter before making his unfounded opinions, or he has simply ignored the abundant evidence undermining his position in the hopes that the Court will follow suit. Mr. Bernheim's conclusions clearly do not "fit" the factual reality of this case. As a result, Mr. Bernheim's's report and testimony does not satisfy

13

the requirements of Fed. R. Civ. Pro. 702 as set forth by <u>Daubert</u>, and as a result, they must be exclued from evidence at trial.

**IV.** **<u>REQUEST FOR A DAUBERT HEARING:</u>**

Defendants respectfully submit that the complexities of this case require a hearing to fully address the issues raised herein. Although Defendants believe the deficiencies and inconsistencies which have been outlined are sufficient to demonstrate the insufficiency of Plaintiff's expert's opinions and, therefore, Plaintiff's case, specifically Plaintiff's Dragonetti Act claim, the Court can more fully appreciate their shortcomings only with a hearing. Defendants, therefore respectfully request a <u>Daubert</u> hearing and oral argument on the issues raised in this Motion.

## V. CONCLUSION:

For the foregoing reasons, it is respectfully requested that this Court grant Defendants, Midland Credit Management, Inc., Midland Funding, LLC and Burton Neil & Associates, P.C.'s, motion and preclude Daniel S. Bernheim from testifying at trial.

**Respectfully submitted,**

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN P.C.**

BY: _/s/ Ronald M. Metcho / rmm5150_
RONALD M. METCHO, ESQUIRE
ANDREW M. SCHWARTZ, ESQUIRE
2000 Market St., 24th Floor
Philadelphia, PA 19103
215-575-2595 / 215-575-0856 (f)
rmmetcho@mdwcg.com
amschwartz@mdwcg.com
Attorneys for Defendant s
Midland Credit Management, Inc.,
Midland Funding, LLC and
Burton Neil & Associates, P.C.

Dated: July 19, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ANGELINE MONTGOMERY, | |
|---|---|
| Plaintiff, | **Civil Action No.** |
| vs. | 2:12-CV-01244-MSG |
| MIDLAND CREDIT MANAGEMENT, INC.; MIDLAND FUNDING, LLC; and BURTON NEIL & ASSOCIATES, P.C., | |
| Defendants. | |

### CERTIFICATE OF SERVICE

I, Ronald M. Metcho, Esquire, certify that a true and correct copy of Defendants, Midland Credit Management, Inc., Midland Funding, LLC and Burton Neil & Associates, P.C.'s Daubert Motion to Preclude Plaintiff's Expert, Daniel S. Bernheim and supporting Brief were served on opposing counsel via ECF on <u>July 19, 2013</u>.

                                            **MARSHALL DENNEHEY WARNER**
                                            **COLEMAN & GOGGIN P.C.**

BY:     <u>/s/ Ronald M. Metcho / rmm5150</u>
           RONALD M. METCHO, ESQUIRE
           Attorneys for Defendants
           Midland Credit Management, Inc.,
           Midland Funding, LLC and
           Burton Neil & Associates, P.C.